496 P.2d 149

Lloyd E. LEWIS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Otis Elevator Company, Respondent Employer,

Employer Commercial Union Companies, Respondent Carrier.

No. 1 CA–IC 604.

Court of Appeals of Arizona, Division 1, Department B.

April 27, 1972.

William B. Revis, Phoenix, for petitioner.

Jennings, Strouss & Salmon, by M. Byron Lewis, Phoenix, for respondents.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

JACOBSON, Judge.

The question raised by this appeal by writ of certiorari is whether the medical evidence is sufficient to establish legal causation.

On June 26, 1969 the petitioner, Lloyd E. Lewis, a supervisor for Otis Elevator Company, felt a snap in his back while bending over to pick up a spool of wire during the course of his employment. At first, petitioner did not feel any discomfort but a few days later he felt pain in his left leg and hip; he mentioned it to his supervisor on July 1, but did not indicate that the pain was job related. On July 29, petitioner visited a family physician, Dr. Geisler, who after taking X-rays of petitioner's hip, diagnosed his symptoms as arthritis. Dr. Geisler's records did not contain any mention of an industrial injury occurring on June 26, 1969. At the request of Dr. Geisler, petitioner visited Dr. Robert A. Johnson, an orthopedic surgeon. Dr. Johnson diagnosed petitioner's problems as a ruptured disc and subsequently performed corrective surgery. The initial history taken by the doctor's employees did not indicate that petitioner's condition was related to an industrial injury, yet the doctor testified that it was

standard procedure to ask all patients if the injury was caused by an industrial accident. While petitioner was in the hospital recuperating from surgery, he mentioned to Dr. Johnson that his injury must have been caused by the June 26, 1969 incident because prior to that time he never had any problems with his back nor experienced any pain in that region. The medical evidence disclosed that petitioner suffers from a generalized degenerative disc disease.

In January, 1970, petitioner notified his employer of the injury and then filed a a claim for compensation. A hearing was held and the hearing officer rendered a "Decision upon Hearing and Findings and Award for Non-Compensable Claim." The Industrial Commission affirmed the award and petitioner has appealed from that adverse decision.

At the outset this court notes that the question of whether an industrial episode did in fact occur on June 26, 1969, does not appear to be a question in this appeal. At oral argument respondent indicated that the only question involved in the appeal related to the element of legal causation, admitting the industrial episode. We are therefore of the opinion that the only question before us in this appeal pertains to whether this episode legally caused the subsequent injury.

Petitioner contends that the medical evidence was sufficient to satisfy the requirements for *legal* causation between the industrial episode and the injury even though the testimony may not have been sufficient to establish *medical* causation. Respondents contend this evidence is insufficient to show even legal causation.

The leading Arizona case which defines legal causation and distinguishes it from medical causation is Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960). In discussing proximate cause the court in *Murray* said "the injury need not be the sole cause of disability, if it is a producing cause". In distinguishing between

161

the medical cause of a condition and the legal cause the same Court had this to say:

"The difference in the medical and legal concept of cause results from the obvious differences in the basic problems and exigencies of the two professions in relation to causation. By reason of his training, *the doctor is thinking in terms of a single, precise cause for a particular condition.* The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and *recognizes more than one cause for a particular injurious result.*" 87 Ariz. at 199, 349 P.2d at 633 (Emphasis added.)

Whatever the state of medical testimony may have been at the time of *Murray,* we are now convinced that the medical profession generally is aware of the definition of legal causation. While the briefs in that matter speak in terms of the difference in causation tests set forth in *Murray,* our reading of the medical testimony in this case leads to the conclusion that it was not the doctor who was confused, but the interpretation placed on his testimony. Be · that as it may, *Murray* does set forth the legal causation test for Arizona.

With the legal principles of *Murray* in mind, we shall examine the testimony of the sole medical witness, Dr. Johnson, from which the hearing officer concluded that the testimony was equivocal, uncertain, and failed to establish a causal connection.

On direct examination Dr. Johnson initially stated that it was his "opinion that he [Mr. Lewis] had a ruptured disc . . . which was due to his injury when he picked up something off the floor approximately four months previously."

On cross-examination, the following testimony was elicited:

"Q. Can you say to a reasonable degree of medical probability that it was that incident, as opposed to the generalized degenerative disk disease?

"A. No, I cannot."

On redirect, the following question was asked:

"Q. Doctor, do you have an opinion in terms of a reasonable degree of medical certainty or probability that the incident that was given to you in your history by Mr. Lewis was *a contributing factor or was in some way a cause of the herniated disk* for which you treated Mr. Lewis on the third day of October, 1969, and thereafter? (Emphasis added.)

"A. Yes, I felt that it was."

When considered at first blush it appears that the doctor's testimony was equivocal. However, when we consider this testimony as a whole, together with the context in which the questions were asked, we are convinced that Dr. Johnson was in fact answering two separate questions, one dealing with sole precipitating cause and the other dealing with contributing cause. On the one hand, he was not prepared to say to a medical probability, that the incident of July 26, 1969 was the sole cause of his ruptured disc because of the underlying degenerative disease. On the other hand, he was willing to say to a reasonable degree of medical certainty that this incident was a producing or a contributing cause of the injury. This latter testimony satisfies the test of legal causation as defined in *Murray, supra.*

We are unable to agree with the hearing officer's determination that Dr. Johnson's testimony was "equivocal and impregnated with substantial uncertainty" or that it was "susceptible of an interpretation that Dr. Johnson is speaking more of possibilities than probabilities." The hearing officer cited Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710 (1956) and Helmericks v. Airesearch Manufacturing Co., 88 Ariz. 413, 357 P.2d 152 (1960), as authority in support of his conclusion of finding no legal causation. Such reliance is not warranted by the facts in this case because in the cases relied upon by the hearing officer there was no medical testimony which even approached the degree of certainty as exists in the present case.

We find that the medical evidence was sufficient to establish legal causation be-

tween the accident and the injury sustained as a result thereof. Therefore petitioner has sustained his burden of proving by a preponderance of the evidence all of the essential elements of his claim. In re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969).

Award set aside.

HAIRE, C. J., and EUBANK, J., concur.